Kevin R. McCarthy, VSB No. 14273
McCarthy & White, PLLC
8508 Rehoboth Court
Vienna, VA 22182
703-770-9261
krm@mccarthywhite.com
Attorneys for Trustee

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
********************************
In re:                          *
                                *
D.C. DIAMOND CORPORATION        *        Case No. 12-16730-BFK
                                *        (Chapter 7)
                Debtor(s).      *
********************************
```

TRUSTEE'S MOTION TO APPROVE REAL ESTATE
PURCHASE AND SALE AGREEMENT AND SELL REAL PROPERTY
FREE AND CLEAR OF ANY INTEREST OF BLUE RIDGE CHRISTIAN HOME
OF BEALETON, MELVIN C. BENDER, AND HJE GROUP, L.C.
(GPIN Nos. 6889-31-6326 & 6888-39-2760)

Kevin R. McCarthy, Trustee moves the Court for authorization to sell real property of

Red Maple Properties, LLC free and clear of any interest of Blue Ridge Christian Home Of

Bealeton, Melvin C. Bender, and HJE Group, L.C., pursuant to 11 U.S.C. § 363(b)&(f) and

Federal Rule of Bankruptcy Procedure 6004(a)-(c), the Order Granting Motion to Approve

Settlement Agreement Between the Trustee and HJE Group, L.C. *et al.* ("Settlement Agreement

Order") (D.E. 590), and the Settlement Agreement approved by the Settlement Agreement Order

("Settlement Agreement"), which authorized the Trustee to sell the subject real property parcel,

on the terms and conditions set forth below, and to take any actions provided therein without

further Order of the Court, namely:

PROPERTY FOR SALE:  Certain parcels of real property located in Fauquier County,
Virginia consisting of approximately 100 acres of land, more particularly identified by the GPIN
Nos. 6889-31-6326 & 6888-39-2760 ("the Property").  **Note: PIN #'s 6889-31-1604, 6889-41-**

**0225, and 6888-39-2760 have been consolidated by Fauquier County into PIN #'s 6889-31-6326 & 6888-39-2760.**

LEGAL DESCRIPTION OF REAL PROPERTY FOR SALE:

**PIN # 6889-31-1604**

All that certain tract or parcel of land identified as Tax Pin No. 6889-31-1604¬000 and known as Parcel 1, containing 38.4431 acres of land, more or less, of the property of D.C. Diamond Corporation, as shown on that certain plat prepared by Eric K. Niskanen, Land Surveyor, dated July 1, 2008 and recorded in Deed Book 1300 at page 2143-2150, among the land records of Fauquier County, Virginia.

AND BEING a portion of the same property conveyed to TOMISLAV MILIC, TRUSTEE OF THE KARLO MILIC IRREVOCABLE TRUST u/t/d/ OF JULY 30, 2009 by Instrument recorded of Deed Book 1326 at Page 1379, among the land records of FAUQUIER COUNTY, Virginia.

**PIN # 6889-41-0225**

All that certain tract or parcel of land identified as Tax Pin No. 6889-41-0225¬000 and known as Parcel 3, containing 41.3535 acres of land, more or less, of the property of D.C. Diamond Corporation, as shown on that certain plat prepared by Eric K. Niskanen, Land Surveyor, dated July 1, 2008 and recorded in Deed Book 1300 at Page 2143-2350, among the land records of Fauquier County, Virginia.

AND BEING a portion of the same property conveyed to TOMISLAV MILIC, TRUSTEE OF THE KARL MILIC IRREVOCABLE TRUST u/t/d/ OF JULY 30, 2009 by Instrument recorded at Deed Book 1326 at Page 1376, among the land records of FAUQUIER. COUNTY, Virginia.

**PIN # 6888-39-2760**

Beginning at a point in the northwesterly right-of-way line of Catlett Road, State Route No. 28, said point also marking the most southerly corner of the property, now or formerly, of D.C. Diamond Corporation; thence with the said northwesterly right-of-way line of Catlett Road the following courses and distances; S. 51 degrees 24' 09" W. 1009.99 feet to an iron pipe, S. 56 degrees 52' 39" W. 257.35 feet in an iron pipe, S. 51 degrees 41' 40" W. 71.85 feet to a VDOT monument, S. 51 degrees 41' 40" W. 99.93 feet to a VDOT monument and N. 71 degrees 51' 28" W. 48.24 feet to a VDOT monument in the easterly right-of-way line of James Madison Highway U.S. Routes 15 and 29; thence with the said easterly right of way line of James Madison Highway the following courses and distances; N 4 degrees 10' 45" E. 350.00 feel to a VDOT monument, N 5 degrees 31' 34" E. 149.66 feet to a VDOT monument, N 4 degrees 19' 01" E. 200.37 feet to a VDOT monument, N. 2 degrees 37' 28" E. 100.04 feet to a VDOT monument and N. 4 degrees 20' 34" E. 209.09 feet to an iron pipe marking the most southerly corner of the property, now or formerly, of Meeks; thence departing James Madison Highway and running with the southeasterly line of said properties, now or formerly, of Meeks N. 56 degrees 26' 13" E. 785.51 feet to a point in the southwesterly line of the aforementioned property, now or formerly, of D.C. Diamond Corporation; thence with the said southwesterly line of the property, now or formerly, of D.C. Diamond Corporation S. 38 degrees 13' 32" E. 736.24 feet to the point of beginning, containing 20.4550 acres of land, more or less.

AND BEING a portion of the same properly conveyed to TOMISLAV MILIC, TRUSTEE OF THE KARL MILIC IRREVOCABLE TRUST u/t/d/ OF JULY 30, 2009 by

Instrument recorded at Deed hook 1326 at Page 1373 among the land records of FAUQUIER COUNTY, Virginia.

**Note: PIN #'s 6889-31-1604, 6889-41-0225, and 6888-39-2760 have been consolidated by Fauquier County into PIN #'s 6889-31-6326 & 6888-39-2760.**

INTEREST BEING SOLD: Entire fee simple interest.

TYPE OF SALE: Private.

PRIVATE SALE PRICE: $400,000 "as is," "where is," and "with all faults" except for the Deed and representations or warranties of Seller, including Permitted Encumbrances, in the Real Estate Purchase And Sale Agreement ("the Agreement"), which is attached to the Motion as Exhibit A. The Agreement provides, among other terms, that "the obligation to consummate the Closing shall not be affected by any appeal of the Sale Order, or by any title insurance exception or requirement." The Agreement also provides that the "Property does not include any right, title, or interest in cash funds in the approximate amount of $748,824 ("Road Escrow Funds") held by Fauquier County, Virginia as security for the construction of an access road (i.e., Southcoate Village Drive) across the Property." Time is of the essence.

APPRAISAL VALUE: Not available. Prior to entering into the now-terminated contract with Elm Street Communities, Inc. subject to a rezoning contingency (which contract the Court approved on January 30, 2019, by order entered as Docket Entry No. 673), the Trustee received offers for the Property in the low $300,000's during a period when the Property was listed for sale by Weber-Rector Commercial Real Estate Services. After termination of the contract with Elm Street Communities, Inc., the Trustee contacted all parties thought to have a potential interest in the Property, including Elm Street Communities, Thomas Hugill, and Sasha Hazlett, and proposed a form of contract not contingent on rezoning. The Agreement is the highest offer for the Property received in response.

CERTAIN OTHER PROVISIONS OF AGREEMENT: The proposed sale order may contain standard provisions including the following:

a. approves this Agreement and authorizes the sale of the Property by Seller to Purchaser on the terms set forth herein;

b. provides that the sale of the Property vests Purchaser with all right, title and interest of Seller in, to and under the Property free and clear of all encumbrances (other than Permitted Encumbrances, if any), and on an "AS IS" and "WHERE IS" basis, without any representations or warranties of any kind (including no representations or warranties as to merchantability, fitness or use) other than those specifically set forth in this Agreement;

c. finds that Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and is entitled to the protections thereof;

d. finds that the sale of the Property to Purchaser pursuant to the terms of this Agreement constitutes a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and the laws of the states in which Seller is incorporated and any other applicable non-bankruptcy laws;

e. enjoins all persons and entities ("Persons") from taking any actions against Purchaser or its affiliates to recover any claim which such Person has against everyone other than unrelated claims the person may have against Purchaser;

3

f.   provides that Purchaser will not have any successor or transferee liability for liabilities of Seller or associated in any way with the Property (whether under federal or state law or otherwise) as a result of the sale of the Property; and

g.   authorizes Seller to execute such other documents and instruments and take such other actions as may be reasonably necessary or appropriate to allow the consummation of the transactions contemplated by this Agreement.

BUYER:  Pelham Village, LC, a Virginia corporation.  Pelham Village, LC, is an affiliate of Elm Street Communities, Inc.

TIME AND PLACE OF SETTLEMENT:  Within 14 days of entry of an order by the Bankruptcy Court approving the Agreement if the Court waives the stay period under Federal Rule of Bankruptcy Procedure 6004(h), and within 28 days of entry of an order by the Bankruptcy Court approving the Agreement if the Court does not waive the stay period. Settlement will occur through the offices of Fenton Title Company, the Escrow Agent under the Agreement.

LIENS:  Any unpaid real estate taxes shall be paid at closing.  Real estate taxes are believed to be current.  Under the Settlement Agreement HJE Group, L.C. shall receive 75% of net sale proceeds in partial satisfaction of the HJE Lien described therein, **and the Trustee shall be authorized to sell the Property free and clear of the HJE Lien**.

DEBTOR'S EXEMPTIONS:  N/A.

TAX CONSEQUENCES TO ESTATE BY SALE:  None or minimal.  The Debtor carried a tax *loss* in excess of $2,000,000 into 2020.  Any gain will be offset by tax loss.

NET SALE PROCEEDS ESTIMATED TO BE PAID TO ESTATE:  The Trustee estimates that net sale proceeds to the estate from the Property after payment of closing costs, real estate taxes, and 75% of net sale proceeds to the HJE Group in partial satisfaction of the HJE Lien will be approximately $97,000.  This amount is before payment of Trustee compensation and legal expenses, which will be applied for at a later date.

APPLICABILITY OF 11 USC § 363(m) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 6004(h).  Entry of an Order granting the Trustee's Motion will constitute a Court determination that the Buyer is a good faith purchaser and that the Order be immediately effective.

This Motion includes a request that the Trustee be authorized to sell the Property free and clear of any interest in the Property of Blue Ridge Christian Home of Bealeton ("Blue Ridge") or Melvin C. Bender under 11 U.S.C. § 363(f).  No recorded interest of Blue Ridge or Melvin C. Bender appears on a 2017 title report prepared in connection with the Settlement Agreement described above.  Virginia Code § 55-96 states that unrecorded deeds are void against purchasers without notice.  Under the Settlement Agreement Order described above, the Trustee acquired ownership of Red Maple Properties, Inc., which was deeded the Property in 2012 without notice

4

of any interest of Blue Ridge or Mr. Bender.  As a result, applicable non-bankruptcy law permits

the sale of the Property free and clear of any interest of Blue Ridge or Mr. Bender.

Wherefore, the Trustee requests the Court to enter an Order approving the Agreement,

authorizing the Trustee to sell the Property free and clear of any interest of Blue Ridge Christian

Home Of Bealeton, Melvin C. Bender, and HJE Group, L.C., and incorporating the terms and

conditions set forth in the above section entitled CERTAIN OTHER PROVISIONS OF

AGREEMENT.

Respectfully submitted,

<u>/s/ Kevin R. McCarthy</u>
Kevin R. McCarthy, VSB 14273
McCarthy & White, PLLC
8508 Rehoboth Court
Vienna, VA 22182
(703) 770-9261
krm@mccarthywhite.com
Attorneys for Trustee

CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of August, 2020, I served a copy of the foregoing through the court's ecf system on all registered ecf participants who have appeared in this case, emailed a copy to tmilic1@live.com and janja.zobundjija2@zg.t-com.hr, and mailed a copy to:

Blue Ridge Christian Homes
Attention:  Shawn M. Wampler, Administrator
7034 Catlett Road
Bealeton, VA 22712

Melvin C. Bender, Owner
95 Beulah Drive
Raphine, VA 24472

Tomislav Milic
P.O. Box 405
Bealeton, VA 22712

/s/ Kevin R. McCarthy
Kevin R. McCarthy

## REAL ESTATE PURCHASE AND SALE AGREEMENT

**THIS REAL ESTATE PURCHASE AND SALE AGREEMENT** (this "**Agreement**"), is made as of this $\underline{12}$ day of $\underline{\text{August}}$, 2020, by and among Pelham Village, LC a Virginia corporation/limited liability company/partnership ("**Purchaser**") and Kevin R. McCarthy (the "**Seller**"), the duly-appointed chapter 7 trustee for the bankruptcy estate of D.C. Diamond Corporation (the "**Debtor**"), and Fenton Title Company, as escrow agent (the "**Escrow Agent**"). Purchaser and Seller are hereinafter referred to collectively as the "**Parties.**"

## RECITALS

A.      On November 12, 2012, the Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division (the "**Bankruptcy Court**"), thereby commencing the bankruptcy case captioned as *In re D.C. Diamond Corporation* (Case No. 12-16730) (the "**Bankruptcy Case**").

B.      On October 16, 2015, the Bankruptcy Court entered an order converting the Bankruptcy Case to a liquidation under chapter 7 of the Bankruptcy Code [Docket No. 424].

C.      Upon conversion of the Bankruptcy Case chapter 7, the United States Trustee for Region Four appointed Seller as the Debtor's chapter 7 trustee.

D.      Red Maple Properties, LLC ("**RMP**") owns certain parcels of real property located in Fauquier County, Virginia consisting of approximately 100 acres of land, more particularly identified by the GPIN's: 6889-31-6326 & 6888-39-2760 and more particularly described in Exhibit A (the "**Property**"). (Note: GPIN's 6889-31-1604 & 6889-41-0225 have been consolidated into GPIN 6888-39-2760.)

E.      RMP is party to a Settlement Agreement (the "**Settlement Agreement**") approved by the Court in the Bankruptcy Case, whereby the Debtor's bankruptcy estate became the owner of 100% of the membership interests in RMP.

F.      The Seller, as bankruptcy trustee for the Debtor and its bankruptcy estate, is authorized to sell the Property subject to the approval of the Bankruptcy Court as set forth herein.

G.      Purchaser desires to purchase the Property, and Seller desires to sell the Property, upon the terms and conditions hereinafter set forth.

H.      The Seller and the Purchaser acknowledge that the Property does not include any right, title, or interest in cash funds in the approximate amount of $748,824 ("Road Escrow Funds") held by Fauquier County, Virginia as security for the construction of an access road

EXHIBIT A

(i.e., Southcoate Village Drive) across the Property, which Road Escrow Funds are owned by the Debtor's bankruptcy estate and which the Seller as chapter 7 trustee of D.C. Diamond Corporation shall be free to pursue turnover thereof to the bankruptcy estate.

**NOW, THEREFORE,** for and in consideration of the mutual promises of the Parties herein contained, the premises, and other good and valuable consideration, and incorporating the foregoing recitals, and subject to Bankruptcy Court approval, the Parties hereto agree and Agreement as follows:

1.      <u>Agreement of Purchase and Sale</u>. Subject to the provisions of this Agreement and the approval of the Bankruptcy Court, and for the consideration herein stated, Seller agrees to sell the Property to Purchaser and Purchaser agrees to buy the Property from Seller.

2.      <u>Purchase Price</u>. The purchase price (the **"Purchase Price"**) to be paid by Purchaser for the Property shall be an amount equal to Four Hundred Thousand DOLLARS ($400,000.00) less a credit for the Earnest Money (as defined in paragraph 3). The Purchase Price shall be payable to Seller at closing by wire transfer of immediately available funds to an account designated by Seller.

3.      <u>Earnest Money</u>. Upon execution of this Agreement, Purchaser shall deliver to Escrow Agent the sum of Ten Thousand Dollars ($10,000.00) (said amount is hereinafter referred to as the **"Earnest Money"**). Escrow Agent agrees to hold the Earnest Money in trust, in a non- interest-bearing account and to disburse the Earnest Money in accordance with the terms hereof. At the Closing (as hereinafter defined), the Earnest Money shall be applied as a credit against the Purchase Price as provided in paragraph 2 above.

4.      <u>Closing</u>.

a.      The execution and delivery of the documents and instruments for the consummation of the purchase and sale pursuant hereto (herein referred to as the **"Closing"**) shall take place on or before the date which is fourteen  (14) days after the Sale Motion order (the **"Sale Order"** has been approved and entered on the Bankruptcy Case docket provided that the Sale Order includes a provision (the **"Stay Waiver"**) waiving the stay period under Federal Rule of Bankruptcy Procedure 6004(h).  In the event the Sale Order does not include a Stay Waiver, then Closing shall occur on or before the date which is twenty-eight (28) days after entry of the Sale Order through the offices of Escrow Agent, subject to extension as hereinafter provided, or on such earlier date and time, and/or at such other location, as may be mutually agreeable to Seller and Purchaser.

b.      Purchaser shall deliver to Escrow Agent the balance of the Purchase Price prior to the Bankruptcy Court hearing to approve the Sale Motion.

c. Prior to the approval of the Sale Motion, Seller shall execute a special warranty deed (the **"Deed"**) (warranting only against the claims of all persons claiming by, through or under Seller) conveying the Property to Purchaser subject to the Permitted Encumbrances (as hereinafter defined). The legal description of the Property to be contained in such

- 2 -

Deed shall be the legal description of the Property as shown in Exhibit A. The Parties agree to do such other acts and execute and deliver such other documents and instruments as are reasonably necessary or desirable for consummation of the transactions contemplated hereby. The Parties acknowledge and agree that the obligation to consummate the Closing shall not be affected by any appeal of the Sale Order, or by any title insurance exception or requirement.

5.    <u>Title and Survey</u>.

a.    Seller agrees to convey to Purchaser fee simple title to the Property by the Deed, free and clear of the Deed of Trust securing an obligation to HJE Group, L.C. recorded in Deed Book 1542 at page 532 but subject to such encumbrances as are set forth on *Exhibit B* attached hereto (hereinafter referred to as the "**Permitted Encumbrances**").

b.    Subject to the Permitted Encumbrances, so long as this Agreement remains in force and effect, Seller shall not lease, encumber or convey all or part of the Property or any interest therein, or enter into any agreement granting to any person any right with respect to the Property or any portion thereof, without the prior written consent of Purchaser.

6.    <u>Inspection; AS IS Sale</u>.

a.    Purchaser and its agents, representatives, employees, engineers and contractors shall have the right at any time during the term of this Agreement, at Purchaser's sole cost and expense, to enter upon the Property to inspect, examine, survey and make test borings, soil bearing tests, timber cruises, environmental site assessments and other engineering tests or surveys which it may deem necessary or advisable. Purchaser hereby agrees to indemnify and hold Seller harmless from and against any and all cost, expense and/or liability resulting from claims or damages caused by said inspections, examinations and tests. The foregoing indemnification and hold harmless provision shall survive any termination, cancellation or expiration of this Agreement or the Closing.

b.    Except for the Deed and any representations or warranties of Seller expressly set forth in this Agreement, the purchase and sale pursuant to this Agreement will be on an "AS IS", "WHERE IS" and "WITH ALL FAULTS" basis, with no representations, warranties, guaranties or commitments of any kind whatsoever, express or implied, by Seller with respect to the Property or any matter relating to the Property. The provisions of this subparagraph (b) shall survive the Closing.

7.    <u>Condition of Property; Damage; Condemnation</u>.

a.    Seller agrees that at the Closing the Property shall be in the same condition as exists on the date hereof, subject to natural wear and tear, condemnation, casualties beyond Seller's control and the Permitted Encumbrances. During the term of this Agreement, Seller shall neither cut or remove nor permit the cutting or removal of any timber or trees which are included as part of the Property, except as may otherwise be provided in any of the Permitted Encumbrances.

b.    If at any time prior to the Closing, the Property or any part thereof (including, but not limited to, any timber or trees which are included as part of the Property) is destroyed or damaged by fire or other casualty and the amount of such damage exceeds TEN THOUSAND AND NO HUNDRED DOLLARS ($10,000.00), then Purchaser, at its sole option,

- 4 -

may elect either (i) to cancel this Agreement, whereupon Escrow Agent shall promptly return the Earnest Money to Purchaser and no party hereto shall have any further rights or obligations hereunder (except as may otherwise be expressly provided herein), or (ii) to purchase the Property without reduction in the Purchase Price. Purchaser's option under this paragraph 7(b) shall be exercisable by giving written notice of such election to Seller at any time on or before five (5) days after Purchaser's receipt of notice of the occurrence of such damage or destruction and the date of Closing shall be extended to the extent necessary (x) to permit the exercise of such option by Purchaser and (y) to obtain Bankruptcy Court approval.

    c.  If at any time prior to the Closing, any action or proceeding is filed or threatened under which the Property or any part thereof may be taken pursuant to any law, ordinance or regulation by condemnation or the right of eminent domain, then Purchaser at its sole option may elect either (i) to cancel this Agreement, whereupon Escrow Agent shall promptly return the Earnest Money and Purchase Price to Purchaser and no party hereto shall have any further rights or obligations hereunder (except as may otherwise be expressly provided herein), or (ii) to purchase the Property pursuant to this Agreement, notwithstanding such action or proceeding, whereupon Purchaser shall be entitled to receive at the Closing a credit against the Purchase Price in the amount of all proceeds of any awards, if any, previously paid to Seller with respect to the Property for such taking and to receive all such proceeds payable after Closing. Purchaser's option under this paragraph 7(c) shall be exercisable by giving written notice of such election to Seller at any time on or before five (5) days after the determination of the amount of the proceeds payable with respect to such taking and the date of Closing shall be extended to the extent necessary (x) to permit the exercise of such option by Purchaser and (y) to obtain Bankruptcy Court approval.

    8.  <u>Bankruptcy Court Approval</u>. As soon as reasonably practicable after the execution of this Agreement, Seller shall cause to be filed with the Bankruptcy Court a motion to approve the sale (the **"Sale Motion"**) of the Property to Purchaser on the terms and conditions of this Agreement pursuant to section 363 of the Bankruptcy Code. Purchaser understands and acknowledges that third parties may submit higher and better offers for the Property, the Seller may bring other offers to the attention of the Bankruptcy Court and Purchaser make recommendations concerning them to the Court, and the Bankruptcy Court may hold an auction for the sale of the Property. After execution of this Agreement but prior to the Sale Motion, any offers to purchase the Property, or parts thereof, received by Seller which Seller intends to bring to the Court's attention as a higher or better offer shall be provided to Purchaser. Purchaser may at any time prior to the Sale Motion amend this Agreement to match or exceed the terms of the third party offer.

Upon approval of the Sale Motion, the Seller shall submit an order to the Bankruptcy Court that includes standard provisions that would typically be contained in a sale order pursuant to section 363 of the Bankruptcy Code, such as the following:

    a.  approves this Agreement and authorizes the sale of the Property by Seller to Purchaser on the terms set forth herein;

    b.  provides that the sale of the Property vests Purchaser with all right, title and interest of Seller in, to and under the Property free and clear of all encumbrances (other than

- 5 -

Permitted Encumbrances, if any), and on an "AS IS" and "WHERE IS" basis, without any representations or warranties of any kind (including no representations or warranties as to merchantability, fitness or use) other than those specifically set forth in this Agreement;

        c.     finds that Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and is entitled to the protections thereof;

        d.     finds that the sale of the Property to Purchaser pursuant to the terms of this Agreement constitutes a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and the laws of the states in which Seller is incorporated and any other applicable non-bankruptcy laws;

        e.     enjoins all persons and entities ("**Persons**") from taking any actions against Purchaser or its affiliates to recover any claim which such Person has against everyone other than unrelated claims the person may have against Purchaser;

        f.     provides that Purchaser will not have any successor or transferee liability for liabilities of Seller or associated in any way with the Property (whether under federal or state law or otherwise) as a result of the sale of the Property; and

        g.     authorizes Seller to execute such other documents and instruments and take such other actions as may be reasonably necessary or appropriate to allow the consummation of the transactions contemplated by this Agreement.

      9.     <u>Warranties and Representations.</u>

        a.     Seller hereby warrants and represents to Purchaser that Seller has the full right, power, and authority to enter into and perform this Agreement; and no consent, approval, order or authorization of any court or other governmental entity other than the Bankruptcy Court is required to be obtained by Seller in connection with the execution and delivery of this Agreement or the performance hereof by Seller.

        b.     Purchaser hereby warrants and represents to Seller that Purchaser has the full right, power and authority to enter into and perform this Agreement; and no consent, approval, order or authorization of any court or other governmental entity is required to be obtained by Purchaser in connection with the execution and delivery of this Agreement or the performance hereof by Purchaser.

      10.    <u>Brokerage Commission.</u> Seller and Purchaser each warrant and represent to the other that neither has incurred any liability for any brokerage fee or commission in connection with the execution and delivery of this Agreement or the consummation of the transactions contemplated hereby. Seller and Purchaser each agree to indemnify and hold harmless the other from any and all damage, loss, liability, expense and claim (including but not limited to attorneys' fees and court costs) arising with respect to any such fee or commission which may be suffered by

the indemnified party by reason of any action or agreement of the indemnifying party. The provisions of this paragraph 10 shall survive the Closing or any termination, cancellation or expiration of this Agreement.

11.   Taxes; Expenses.

     a.   Ad valorem real property taxes on the Property and special assessments shall be prorated as of the date of Closing. If actual tax bills for the calendar year of Closing are not available, said taxes shall be prorated based on tax bills for the previous calendar year and the Parties hereto agree to cause a re-proration of said taxes upon the receipt of tax bills for the calendar year of Closing and to place sufficient funds in escrow with the Escrow Agent to pay for such re-re-proration. This obligation to re-prorate shall survive the closing of the purchase and sale contemplated hereby. If the Property is not designated a separate tax parcel, said taxes shall be adjusted to an amount bearing the same relationship to the total tax bill which the acreage contained within the Property bears to the acreage contained within the property included within said tax bill.

     b.   Purchaser shall pay the transfer or documentary stamp taxes due in connection with the recordation of the Deed and all other closing costs associated with the sale contemplated by this Agreement, including, but not limited to recording fees and the cost of any title examination and title insurance premium in connection with Purchaser's owner's title insurance policy.

     c.   Each party shall pay its respective costs and expenses of legal representation.

     d.   Purchaser shall be solely responsible and liable for any rollback, recapture or other tax or assessment imposed with respect to the Property after execution of this Agreement for any prior or subsequent periods based on any change of use of the Property or due to the sale of the Property to Purchaser. The provisions of this subparagraph (d) shall survive the Closing.

12.   Earnest Money; Default; Remedies.

     a.   If the purchase and sale of the Property contemplated hereby is not consummated because of a default by Purchaser under this Agreement, then Seller shall have the right to require Escrow Agent to pay the Earnest Money to Seller as full liquidated damages and not as a penalty (the Parties hereto acknowledging that Seller's damages as a result of such default are not capable of exact ascertainment and that said liquidated damages are fair and reasonable).

     b.   If the purchase and sale of the Property contemplated hereby is not consummated because of a default by Seller under this Agreement, Purchaser shall be entitled to (i) terminate the Agreement and Escrow Agent shall promptly return the Earnest Money to Purchaser or (ii) seek specific performance.

     c.   If the purchase and sale of the Property contemplated hereby is not consummated because the Bankruptcy Court declines to approve the Agreement for any reason whatsoever, including approval of a competing offer to purchase the Property, then Escrow Agent

- 7 -

shall promptly return the Earnest Money and Purchase Price to Purchaser and in no event shall Purchaser be entitled to sue Seller for damages.

13.     <u>Duties of Escrow Agent</u>. The duties of Escrow Agent shall be as follows:

a.     During the term of this Agreement, Escrow Agent shall hold and deliver the Earnest Money and Purchase Price in accordance with the terms and provisions of this Agreement.

b.     If this Agreement shall be terminated by the mutual written agreement of Seller and Purchaser, or if Escrow Agent shall be unable to determine at any time to whom the Earnest Money should be delivered, or if a dispute shall develop between Seller and Purchaser concerning to whom the Earnest Money should be delivered, then in any such event, Escrow Agent may request joint written instructions from Seller and Purchaser and shall deliver the Earnest Money in accordance with any such joint written instructions received by Escrow Agent.

c.     If costs or expenses are incurred by Escrow Agent because of litigation or a dispute between Seller and Purchaser arising out of the holding of the Earnest Money in escrow, Seller and Purchaser shall each pay Escrow Agent one-half of such costs and expenses. Except for such costs and expenses, no fee or charge shall be due or payable to Escrow Agent for its services as escrow holder.

d.     By joining herein, Escrow Agent undertakes only to perform the duties and obligations imposed upon it under the terms of this Agreement and expressly does not undertake to perform any of the other covenants, terms and provisions incumbent upon Seller and Purchaser hereunder.

e.     Purchaser and Seller hereby agree and acknowledge that Escrow Agent assumes no liability in connection herewith except for gross negligence or willful misconduct; that Escrow Agent shall never be responsible for the validity, correctness or genuineness of any document or notice referred to under this Agreement; and that Escrow Agent may seek advice from its own counsel and shall be fully protected in any action taken by it in good faith in accordance with the opinion of its counsel.

14.     <u>Assignment</u>. Neither party hereto shall assign its rights or obligations hereunder, in whole or in part, without the prior written consent of the other party, which consent shall not be unreasonably withheld.

15.     <u>No Waiver</u>. No action or failure to act by any party hereto shall constitute a waiver of any right or duty afforded to such party under this Agreement, nor shall any such action or failure to act constitute an approval of or acquiescence in any breach of this Agreement except as may be specifically agreed in writing.

16.     <u>Governing Law</u>. This Agreement shall be governed by the laws of the Commonwealth of Virginia.

- 8 -

17.   <u>Notices</u>. Any and all notices, elections and communications required or permitted by this Agreement shall be made or given in writing and shall be delivered in person, by facsimile transmission with confirmation, or by electronic mail transmission, or sent by postage prepaid United States mail, certified or registered, return receipt requested, to the other Parties at the addresses set forth below, or such other address as may be furnished by notice in accordance with this paragraph. The date of notice given by personal delivery or by facsimile or electronic mail transmission shall be the date of such delivery or such transmission. The effective date of notice by mail shall be the date such notice is received by addressee.

Seller:

Kevin R. McCarthy
McCarthy & White, PLLC
8508 Rehoboth Court
Vienna, VA 22182
Facsimile: (703) 770-9263
E-mail: krm@mccarthywhite.com

With a copy to:

Stephen   E.   Leach
Hirschler Fleischer PC
8270 Greensboro Drive – Suite 700
Tysons, VA 22102
Facsimile: 703-584-8901
E-mail: sleach@hirschlerlaw.com

Purchaser:

> Pelham Village, LC
> Joseph Jacobs
> 1355 Beverly Rd., Suite 240
> McLean, VA, 22101
>
> Facsimile: 703-734-0322
> Email: jjacobs@elmstreetdev.com

With a copy to:

> Reed Smith LLP
> 7900 Tysons One Place, Suite 500
> McLean, VA 22102
> Attn: James Brennan
>
> Facsimile: 703- 641-4340
> Email: jbrennan@reedsmith.com

Escrow Agent:

> Fenton Title Company
> 18310 Montgomery Village Ave., Suite 400
> Gaithersburg, MD 20879
> ATTN: Lou Pettey
>
> Facsimile: 301-590-0285
> Email: lpettey@fentontitle.com

Entire Agreement. This Agreement contains the entire agreement among the Parties hereto with respect to the subject matter hereof and cannot be amended or supplemented except by a written agreement signed by all Parties.

- 10

19.   Captions. The captions of paragraphs in this Agreement are for convenience and reference only and are not part of the substance hereof.

20.   Severability. In the event that any one or more of the provisions, paragraphs, words, clauses, phrases or sentences contained in this Agreement, or the application thereof in any circumstance is held invalid, illegal or unenforceable in any respect for any reason, the validity, legality and enforceability of any such provision, paragraph, word, clause, phrase or sentence in every other respect and of the remaining provisions, paragraphs, words, clauses, phrases or sentences of this Agreement, shall not be in any way impaired, it being the intention of the Parties that this Agreement shall be enforceable to the fullest extent permitted by laws.

21.   Counterparts and PDF Copies. This Agreement may be executed in multiple counterparts, each of which shall be deemed part of one and the same instrument. This Agreement may also be executed and delivered by facsimile or PDF (Portable Document Form) transmission, and such execution and delivery shall be valid and enforceable with the same force as if an original hereto had been executed and delivered by such party

22.   Binding Effect. This Agreement shall bind the Parties hereto and their respective heirs, legal representatives, successors and assigns.

23.   Time of Essence. Time is of the essence of this Agreement.

24.   No Survival. Except as may otherwise expressly be provided herein, the provisions of this Agreement shall not survive the closing of the purchase and sale contemplated hereby and shall be merged into the delivery of the Deed and other documents and the payment of all monies pursuant hereto.

25.   Effective Date. The effective date of this Agreement (the **"Effective Date"**) is the date on which the order entered by the Bankruptcy Court approving this Agreement becomes a final order. In the event that the differences between the Effective Date and the execution date of this Agreement goes beyond sixty (60) days, Purchaser shall have the right to terminate the Agreement.

26.   Time Periods. If the time period by which any right, option or election provided under this Agreement must be exercised, or by which any act required hereunder must be performed, or by which the Closing must be held, expires on a Saturday, Sunday or legal or bank holiday, then such time period shall be automatically extended through the close of business on the next regularly scheduled business day that is not a Saturday, Sunday or legal or bank holiday.

27.   Incorporation of Exhibits. All exhibits referred to in this Agreement are hereby incorporated herein by this reference.

IN WITNESS WHEREOF, this Real Estate Purchase and Sale Agreement has been duly executed, sealed and delivered by the Parties hereto the day and year first above written.

**SELLER:**

**KEVIN R. McCARTHY,**
In his capacity as Chapter 7 Trustee
for the estate of D.C. Diamond Corporation

By: _____[SEAL]

Date: ___8 / 12 / 20_____

**PURCHASER:**

**Pelham Village, LC**
A Virginia corporation

By: _____[SEAL]

Date: ___8 . 12 . 20_____

*Signature Page to Real Estate Purchase and Sale Agreement*

## JOINDER TO REAL ESTATE PURCHASE AND SALE AGREEMENT

This Joinder to Real Estate Purchase and Sale Agreement is executed and delivered by the undersigned as of the date of the Real Estate Purchase and Sale Agreement.

**ESCROW AGENT:**

**Fenton Title Company**

A Virginia corporation

By: _____ [SEAL]

Date: ___8/13/2020___

*Signature Page to Joinder to Real Estate Purchase and Sale Agreement*

## PIN # 6889-31-1604

All that certain tract or parcel of land identified as Tax Pin No. 6889-31-1604-000 and known as Parcel 1, containing 38.4431 acres of land, more or less, of the property of D.C. Diamond Corporation, as shown on that certain plat prepared by Eric K. Niskanen, Land Surveyor, dated July 1, 2008 and recorded in Deed Book 1300 at page 2143-2150, among the land records of Fauquier County, Virginia.

·AND BEING a portion of the same property conveyed to TOMISLAV MILIC, TRUSTEE OF THE KARLO MILIC IRREVOCABLE TRUST u/t/d/ OF JULY 30, 2009 by Instrument recorded at Deed Book 1326 at Page 1379, among the land records of FAUQUIER COUNTY, Virginia.

## PIN # 6889-41-0225

All that certain tract or parcel of land identified as Tax Pin No. 6889-41-0225-000 and known as Parcel 2, containing 41.3535 acres of land, more or less, of the property of D.C. Diamond Corporation, as shown on that certain plat prepared by Eric K. Niskanen, Land Surveyor, dated July 1, 2008 and recorded in Deed Book 1300 at Page 2143-2150, among the land records of Fauquier County, Virginia.

AND BEING a portion of the same property conveyed to TOMISLAV MILIC, TRUSTEE OF THE KARLO MILIC IRREVOCABLE TRUST u/t/d/ OF JULY 30, 2009 by Instrument recorded at Deed Book 1326 at Page 1376, among the land records of FAUQUIER COUNTY, Virginia.



EXHIBIT

A

## PIN # 6888-39-2760

Beginning at a point in the northwesterly right-of-way line of Catlett Road, State Route No. 28, said point also marking the most southerly corner of the property, now or formerly, of D.C. Diamond Corporation; thence with the said northwesterly right-of-way line of Catlett Road the following courses and distances; S. 51 degrees 24' 09" W. 1009.99 feet to an iron pipe, S. 56 degrees 52' 39" W. 257.35 feet to an iron pipe, S. 51 degrees 41' 40 W. 71.85 feet to a VDOT monument, S. 51 degrees 41' 40" W. 99.93 feet to a VDOT monument and N. 71 degrees 51' 28" W. 48.24 feet to a VDOT monument in the easterly right-of-way line of James Madison Highway U.S. Routes 15 and 29; thence with the said easterly right of way line of James Madison Highway the following courses and distances; N 4 degrees 10' 45" E. 350.00 feet to a VDOT monument, N 5 degrees 31' 34" E. 149.66 feet to a VDOT monument, N 4 degrees 19' 01" E. 200.37 feet to a VDOT monument, N. 2 degrees 37' 28" E. 100.04 feet to a VDOT monument and N. 4 degrees 20' 34" E. 209.09 feet to an iron pipe marking the most southerly corner of the property, now or formerly, of Meeks; thence departing James Madison Highway and running with the southeasterly line of said properties, now or formerly, of Meeks N. 56 degrees 26' 13" E. 785.51 feet to a point in the southwesterly line of the aforementioned property, now or formerly, of D.C. Diamond Corporation; thence with the said southwesterly line of the property, now or formerly, of D.C. Diamond Corporation S. 38 degrees 13' 32" E. 736.24 feet to the point of beginning, containing 30.4550 acres of land, more or less.

AND BEING a portion of the same property conveyed to TOMISLAV MILIC, TRUSTEE OF THE KARLO MILIC IRREVOCABLE TRUST u/t/d/ OF JULY 30, 2009 by instrument recorded at Deed Book 1326 at Page 1373 among the land records of FAUQUIER COUNTY, Virginia.

Note: PIN #'s 6889-31-1604, 6889-41-0225, and 6888-39-2760 have been consolidated by Fauquier County into PIN #'s 6889-31-6326 & 6888-39-2760.

## EXHIBIT B

### PERMITTED ENCUMBRANCES

1. Ad valorem taxes not yet due and payable.

2. All zoning and other land use requirements, conditions, and restrictions, including any development proffers to or conditions of Fauquier County, Virginia.

3. Rights of third persons and/or public authorities and utilities in and to that portion of the Property located within the boundaries of roads, highways, easements and rights-of-way, whether of record, on the ground, or acquired through prescription.

4. All matters which would be revealed by a careful inspection or a current survey of the Property.

5. Riparian rights of others in and to any creeks, rivers, lakes, streams or other bodies of water located on or adjoining the Property.

6. All matters of record, except the Deed of Trust securing HJE Group, L.C. recorded in Deed Book 1542 at page 532 in the land records of Fauquier County, Virginia. The subject property will be sold free and clear of such Deed of Trust and any other monetary liens.

7. Any discrepancy between (a) the boundary lines of the Property as described in any new survey of the Property obtained by Purchaser and the legal description of the Property based on such survey and set forth in the deed from Seller to Purchaser and (b) the boundary lines of the Property as described in the description of the Property contained in the deed by which Seller acquired title to the Property.